

# THE ATTORNEY GENERAL
## OF TEXAS

August 31, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Jerry Cobb  
Criminal District Attorney  
P. O. Box 2344  
Denton, Texas   76201

Opinion No. JM-780

Re: Validity of a proposed municipal ordinance defining "contemporary community standard" for purposes of regulation of obscenity

Dear Mr. Cobb:

You ask whether the city of Lewisville, Texas, may adopt an ordinance defining "contemporary community standards" for purposes of regulation of obscenity. You state that Lewisville, a home rule city, has received a petition requesting an election to adopt a city ordinance defining "contemporary standards" and "contemporary community standards" for obscenity-related matters within the city limits. The proposed ordinance is worded as follows:

> AN ORDINANCE DEFINING 'CONTEMPORARY COMMUNITY STANDARDS' WITHIN THE CITY OF LEWISVILLE, TEXAS
>
> PURPOSE AND INTENT
>
> It is the purpose of this ordinance to define the terms 'contemporary standards' and 'contemporary community standards' as that term is used as one element of a definition of obscenity;
>
> It is the further purpose of this ordinance to provide the City of Lewisville, Texas, its officers, agents, employees, and governing bodies with a standard or measure by which to determine, when used in conjunction with the latest judicial decisions on the subject, what constitutes obscenity within the City of Lewisville, Texas.
>
> STANDARDS
>
> Within the City of Lewisville, any business, or work, which contains, utilizes, displays, distributes, or gives representations or descriptions of any of the following, involving children or

adults:  ultimate sexual acts, normal or per-
verted, actual or simulated; and patently
offensive representations or descriptions of
masturbatory, excretory functions, and lewd
exhibition of the genitals, is determined to be
patently offensive to the adults of the City of
Lewisville, Texas, and shall be presumed by such
employees, agents, representatives and governing
bodies to 'appeal to the prurient interest.'  The
City of Lewisville, Texas, its officers, agents,
employees, representatives, and all of its
decision-making bodies shall recognize this as
a standard set by the adults of the City of
Lewisville, Texas, to be used in determining
whether such business or work shall be obscene,
when considered together with applicable law and
judicial decisions.  (Emphasis added.)

As we stated in Attorney General Opinion JM-619 (1987), a
municipal ordinance may not conflict with state law.  City of
Brookside Village v. Comeau, 633 S.W.2d 790, 796 (Tex. 1982), cert.
denied, 459 U.S. 1087 (1982).  Nor may a city regulate in an area
where the legislature intends state law to be controlling.  It is not
entirely clear how this ordinance is intended to be effected.  It does
not contain criminal penalties.  We assume it was intended as
instruction to juries in criminal cases in the area.

In our opinion, the proposed ordinance conflicts with state law
in several respects.

Penal Code section 43.23 creates offenses for the promotion,
possession, and distribution of obscene material.  Relevant defini-
tions are found in subsection (a) of Penal Code section 43.21 as
follows:

(a)  In this subchapter:

(1) 'Obscene' means material or a
performance that:

(A) the average person, applying
contemporary community standards, would
find that taken as a whole appeals to the
prurient interest in sex;

(B)  depicts or describes:

(i) patently offensive repre-
sentations or descriptions of
ultimate sexual acts, normal or

perverted, actual or simulated, including sexual intercourse, sodomy, and sexual bestiality; or

(ii) patently offensive representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs; and

(C) taken as a whole, lacks serious literary, artistic, political, and scientific value.

(2) 'Material' means anything tangible that is capable of being used or adapted to arouse interest, whether through the medium or reading, observation, sound, or in any other manner, but does not include an actual three dimensional obscene device.

. . . .

(4) 'Patently offensive' means so offensive on its face as to affront current community standards of decency.

. . . .

(b) If any of the depictions or descriptions of sexual conduct described in this section are declared by a court of competent jurisdiction to be unlawfully included herein, this declaration shall not invalidate this section as to other patently offensive sexual conduct included herein.

The federal constitutional standard which must be met when a state attempts to regulate obscene materials was articulated in Miller v. California, 413 U.S. 15 (1973). See also Pope v. Illinois, 107 S. Ct. 1918 (1987). State regulation, according to Miller, must be confined to works which depict or describe sexual conduct that is specifically defined by state law as written or authoritatively construed. The United States Supreme Court stated:

> A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

Miller, 413 U.S. at 24.

The Miller decision provided the jury with "guidelines" for determining whether the material being reviewed in a given instance is, in fact, obscene.

> The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest (citation omitted); (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

Id.

Acknowledging the diversity of the fifty states, the Miller court rejected as futile any attempt to formulate a national standard for jurors to use in considering whether "the average person, applying contemporary community standards" would consider certain materials "prurient." Id. at 30. The Court validated the statewide community standard that was challenged in Miller. Id. at 33.

The Texas obscenity statute, amended after Miller v. California, supra, virtually tracks the Supreme Court's holding. The Texas statute does not expressly define the geographical area that constitutes the "community." However, the Court of Criminal Appeals has consistently rejected attempts to instruct juries in obscenity cases that they are to limit their consideration to standards of their local community. Several Texas cases have expressly held that the geographical scope is not limited to one county. Andrews v. State, 652 S.W.2d 370 (Tex. Crim. App. 1983, no pet.); LaRue v. State, 637 S.W.2d 934 (Tex. Crim. App. 1982, no pet.); Graham v. State, 620 S.W.2d 133 (Tex. Crim. App. 1981, no pet.); LaRue v. State, 611 S.W.2d 63 (Tex. Crim. App. 1980); Berg v. State, 599 S.W.2d 802 (Tex. Crim. App. 1980).

In the earlier LaRue decision, the court noted the absence of language in chapter 43 of the Penal Code describing the community scope but referred to two general provisions of the Penal Code for

evidence of legislative intent to provide for statewide uniformity in the application of the code. LaRue v. State, 611 S.W.2d at 64. Finally, the LaRue court relied on the failure of the legislature to redefine "community" after the Berg court rejected a local standard as evidence that the statewide standard is the proper scope for determining obscenity. The Court of Criminal Appeals affirmatively established a statewide community standard in Brewer v. State, 659 S.W.2d 441 (Tex. Crim. App. 1983, no pet.).

The proposed ordinance conflicts with state law, as judicially defined, by restrictively designating the applicable community as the adult residents of the city of Lewisville. An ordinance aimed at punishing an offense that is also addressed by state law must conform to the definitions prescribed by the state law. "If the ordinance is in conflict with the state law, it will be held invalid." Ex Parte Farley, 144 S.W. 530 (Tex. Crim. App. 1912).

The Texas obscenity statute and federal and state cases require the trier of fact to perform several tasks in determining whether certain material is obscene. The proposed ordinance invades the fact finder's province (1) by fixing the standard of the community as of the date of the ordinance; (2) by creating a presumption that certain depictions do appeal to the prurient interest; and (3) by determining that certain depictions are patently offensive. In our opinion, these invasions are in conflict with federal and state law and render the proposed ordinance void.

In Smith v. United States, 431 U.S. 291 (1977) the United States Supreme Court reiterated the role of the jury in applying the three-part test set forth in Miller v. California, supra:

> The phrasing of the Miller test makes clear that contemporary community standards take on meaning only when they are considered with reference to the underlying questions of fact that must be resolved in an obscenity case. The test itself shows that appeal to the prurient interest is one such question of fact for the jury to

---

1. Penal Code section 1.02(6) states that one objective of the code is "to define the scope of state interest in law enforcement against specific offenses and to systematize the exercise of state criminal jurisdiction." Penal Code section 1.08 preempts any governmental subdivision or agency from enacting or enforcing a law that makes any conduct covered by the code an offense subject to a criminal penalty.

> resolve. The Miller opinion indicates that patent
> offensiveness is to be treated in the same way.

Smith v. United States, 431 U.S. at 300-01. Smith rejected the notion
that a legislative body may declare what the community standards will
be.

> It would be just as inappropriate for a legisla-
> ture to attempt to freeze a jury to one definition
> of reasonableness as it would be for a legislature
> to try to define the contemporary community
> standard of appeal to prurient interest or patent
> offensiveness, if it were even possible for such a
> definition to be formulated.

Smith 431 U.S. at 302.

While the Smith court acknowledged that legislative enactments
may set substantive limitations for obscenity cases, the court
concluded that:

> the question of the community standard to apply,
> when appeal to prurient interest and patent
> offensiveness are considered, is not one that can
> be defined legislatively.

Id. at 303.

Texas courts echo this focus on the juror's responsibility to
determine the community standard and to decide patent offensiveness
and appeal to the prurient interest.

> Under this definition [obscenity], the issue
> of what is or is not acceptable according to
> 'contemporary community standards' is a question
> the jury must resolve before determining whether
> the particular material distributed is in fact
> obscene. In other words, the community's
> contemporary standards regarding obscenity are at
> issue. (Emphasis added.)

Carlock v. State, 609 S.W.2d 787, 788 (Tex. Crim. App. 1980).

> Thus, it goes without saying that before
> members of a jury can decide whether given
> material is in fact obscene under the ambit of
> §§43.21 and 43.23, supra, they must first
> determine what are the governing 'contemporary
> community standards.'

Berg v. State, 599 S.W.2d 802, 804 (Tex. Crim. App. 1980).

In a more recent discussion of the Texas obscenity statute, the Court of Criminal Appeals relied on language in Miller v. California, supra, to conclude that the trier of fact plays the pivotal role in obscenity determinations.

> We believe the Court, in using 'the average person,' standard, makes the contemporary or current community standard portion of the test the backdrop against which the jury identifies the material and measures questions of appeal to the prurient interest in sex and what may constitute patent offensiveness.

> As previously noted, when the Legislature of this State enacted the present obscenity statute, it was attempting to satisfy the new test announced by the Supreme Court in Miller. In doing so, it defined 'patently offensive' to mean 'so offensive on its face as to affront current community standards of decency.' We believe this is in accordance with Miller's holding. In applying its test, we do not believe that the Supreme Court wanted a jury to simply hold everything that could be construed as questionably obscene material to be obscenity, but, instead, required that before material could be held obscene, it had to be patently offensive to the average person, applying current community standards, or, to put it another way, the Supreme Court conferred on the trier of fact, who was to be guided by 'the safeguards that judges, rules of evidence, [the] presumption of innocence, and other [such] protective features [provide],' Miller, supra, 413 U.S. at 26, 93 S.Ct. at 2616, the right to make the first determination of identifying the material. Therefore, the right to make the first determination, that is, whether the average person, applying contemporary community standards, would find that the material was facially offensive, and whether, according to contemporary community standards, the material appealed to the prurient interest in sex, was left to the trier of fact. (Emphasis added.)

Andrews v. State, 652 S.W.2d 370, 379-80 (Tex. Crim. App. 1983, no pet.).

By removing from the trier of fact the responsibility to determine the current community standard and to apply that standard to the material in question, the proposed ordinance violates the statutory scheme. Similarly, the ordinance's pronouncement of certain material as patently offensive and presumptively appealing to prurient interest conflicts with state law.

## S U M M A R Y

A proposed municipal ordinance regulating obscenity that defines the community standard on a less than statewide basis and that determines, as a matter of law, issues that are questions of fact is void as conflicting with state and federal law.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Karen Gladney
Assistant Attorney General