Honorable Jerry Cobb Criminal District Attorney P.O. Box 2344 Denton, Texas 76201
Re: Validity of a proposed municipal ordinance defining "contemporary community standard" for purposes of regulation of obscenity
Dear Mr. Cobb:
You ask whether the city of Lewisville, Texas, may adopt an ordinance defining "contemporary community standards" for purposes of regulation of obscenity. You state that Lewisville, a home rule city, has received a petition requesting an election to adopt a city ordinance defining "contemporary standards" and "contemporary community standards" for obscenity-related matters within the city limits. The proposed ordinance is worded as follows:
 AN ORDINANCE DEFINING `CONTEMPORARY COMMUNITY STANDARDS' WITHIN THE CITY OF LEWISVILLE, TEXAS
PURPOSE AND INTENT
 It is the purpose of this ordinance to define the terms `contemporary standards' and to `contemporary community standards' as that term is used as one element of a definition of obscenity;
 It is the further purpose of this ordinance to provide the City of Lewisville, Texas, its officers, agents, employees, and governing bodies with a standard or measure by which to determine, when used in conjunction with the latest judicial decisions on the subject, what constitutes obscenity within the City of Lewisville, Texas.
STANDARDS
 Within the City of Lewisville, any business, or work, which contains, utilizes, displays, distributes, or gives representations or descriptions of any of the following, involving children or adults: ultimate sexual acts, normal or perverted, actual or simulated; and patently offensive representations or descriptions of masturbatory, excretory functions, and lewd exhibition of the genitals, is determined to be patently offensive to the adults of the City of Lewisville, Texas, and should be presumed by such employees, agents, representatives and governing bodies to `appeal to the prurient interest.' The City of Lewisville, Texas, its officers, agents, employees, representatives, and all of its decision-making bodies shall recognize this as a standard set by the adults of the City of Lewisville, Texas, to be used in determining whether such business or work shall be obscene, when considered together with applicable law and judicial decisions. (Emphasis added.)
As we stated in Attorney General Opinion JM-619 (1987), a municipal ordinance may not conflict with state law. City of Brookside Village v. Comeau, 633 S.W.2d 790, 796 (Tex. 1982), cert. denied, 459 U.S. 1087 (1982). Nor may a city regulate in an area where the legislature intends state law to be controlling. It is not entirely clear how this ordinance is intended to be effected. It does not contain criminal penalties. We assume it was intended as instruction to juries in criminal cases in the area.
In our opinion, the proposed ordinance conflicts with state law in several respects.
Penal Code section 43.23 creates offenses for the promotion, possession, and distribution of obscene material. Relevant definitions are found in subsection (a) of Penal Code section43.21 as follows:
(a) In this subchapter:
(1) `Obscene' means material or a performance that:
 (A) the average person, applying contemporary community standards, would find that taken as a whole appeals to the prurient interest in sex;
(B) depicts or describes:
 (i) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy, and sexual bestiality; or
 (ii) patently offensive representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs; and
 (C) taken as a whole, lacks serious literary, artistic, political, and scientific value.
 (2) `Material' means anything tangible that is capable of being used or adapted to arouse interest, whether through the medium or reading, observation, sound, or in any other manner, but does not include an actual three dimensional obscene device.
. . . .
 (4) `Patently offensive' means so offensive on its face as to affront current community standards of decency.
. . . .
 (b) If any of the depictions or descriptions of sexual conduct described in this section are declared by a court of competent jurisdiction to be unlawfully included herein, this declaration shall not invalidate this section as to other patently offensive sexual conduct included herein.
The federal constitutional standard which must be met when a state attempts to regulate obscene materials was articulated in Miller v. California, 413 U.S. 15 (1973). See also Pope v. Illinois, 107 S.Ct. 1918 (1987). State regulation, according to Miller, must be confined to works which depict or describe sexual conduct that is specifically defined by state law as written or authoritatively construed. The United States Supreme Court stated:
 A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.
Miller, 413 U.S. at 24.
The Miller decision provided the jury with "guidelines" for determining whether the material being reviewed in a given instance is, in fact, obscene.
 The basic guidelines for the trier of fact must be: (a) whether `the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest (citation omitted); (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.
Id.
Acknowledging the diversity of the fifty states, the Miller court rejected as futile any attempt to formulate a national standard for jurors to use in considering whether "the average person, applying contemporary community standards" would consider certain materials "prurient." Id. at 30. The Court validated the statewide community standard that was challenged in Miller. Id. at 33.
The Texas obscenity statute, amended after Miller v. California, supra, virtually tracks the Supreme Court's holding. The Texas statute does not expressly define the geographical area that constitutes the "community." However, the Court of Criminal Appeals has consistently rejected attempts to instruct juries in obscenity cases that they are to limit their consideration to standards of their local community. Several Texas cases have expressly held that the geographical scope is not limited to one county. Andrews v. State, 652 S.W.2d 370 (Tex.Crim.App. 1983, no pet.); LaRue v. State, 637 S.W.2d 934 (Tex.Crim.App. 1982, no pet.); Graham v. State, 620 S.W.2d 133 (Tex.Crim.App. 1981, no pet.); LaRue v. State, 611 S.W.2d 63 (Tex.Crim.App. 1980); Berg v. State, 599 S.W.2d 802 (Tex.Crim.App. 1980).
In the earlier LaRue decision, the court noted the absence of language in chapter 43 of the Penal Code describing the community scope but referred to two general provisions of the Penal Code for evidence of legislative intent to provide for statewide uniformity in the application of the code.[1] LaRue v. State,611 S.W.2d at 64. Finally, the LaRue court relied on the failure of the legislature to redefine "community" after the Berg court rejected a local standard as evidence that the statewide standard is the proper scope for determining obscenity. The Court of Criminal Appeals affirmatively established a statewide community standard in Brewer v. State, 659 S.W.2d 441 (Tex.Crim.App. 1983, no pet.).
The proposed ordinance conflicts with state law, as judicially defined, by restrictively designating the applicable community as the adult residents of the city of Lewisville. An ordinance aimed at punishing an offense that is also addressed by state law must conform to the definitions prescribed by the state law. "If the ordinance is in conflict with the state law, it will be held invalid." Ex Parte Farley, 144 S.W. 530 (Tex.Crim.App. 1912).
The Texas obscenity statute and federal and state cases require the trier of fact to perform several tasks in determining whether certain material is obscene. The proposed ordinance invades the fact finder's province (1) by fixing the standard of the community as of the date of the ordinance; (2) by creating a presumption that certain depictions do appeal to the prurient interest; and (3) by determining that certain depictions are patently offensive. In our opinion, these invasions are in conflict with federal and state law and render the proposed ordinance void.
In Smith v. United States, 431 U.S. 291 (1977) the United States Supreme Court reiterated the role of the jury in applying the three-part test set forth in Miller v. California, supra:
 The phrasing of the Miller test makes clear that contemporary community standards take on meaning only when they are considered with reference to the underlying questions of fact that must be resolved in an obscenity case. The test itself shows that appeal to the prurient interest is one such question of fact for the jury to resolve. The Miller opinion indicates that patent offensiveness is to be treated in the same way.
Smith v. United States, 431 U.S. at 300-01. Smith rejected the notion that a legislative body may declare what the community standards will be.
 It would be just as inappropriate for a legislature to attempt to freeze a jury to one definition of reasonableness as it would be for a legislature to try to define the contemporary community standard of appeal to prurient interest or patent offensiveness, if it were even possible for such a definition to be formulated.
Smith 431 U.S. at 302.
While the Smith court acknowledged that legislative enactments may set substantive limitations for obscenity cases, the court concluded that:
 the question of the community standard to apply, when appeal to prurient interest and patent offensiveness are considered, is not one that can be defined legislatively.
Id. at 303.
Texas courts echo this focus on the juror's responsibility to determine the community standard and to decide patent offensiveness and appeal to the prurient interest.
 Under this definition [obscenity], the issue of what is or is not acceptable according to `contemporary community standards' is a question the jury must resolve before determining whether the particular material distributed is in fact obscene. In other words, the community's contemporary standards regarding obscenity are at issue. (Emphasis added.)
Carlock v. State, 609 S.W.2d 787, 788 (Tex.Crim.App. 1980).
Thus, it goes without saying that before members of a jury can decide whether given material is in fact obscene under the ambit of §§ 43-21 and 43.23, supra, they must first determine what are the governing `contemporary community standards.' Berg v. State,599 S.W.2d 802, 804 (Tex.Crim.App. 1980).
In a more recent discussion of the Texas obscenity statute, the Court of Criminal Appeals relied on language in Miller v. California, supra, to conclude that the trier of fact plays the pivotal role in obscenity determinations.
We believe the Court, in using `the average person,' standard, makes the contemporary or current community standard portion of the test the backdrop against which the jury identifies the material and measures questions of appeal to the prurient interest in sex and what may constitute patent offensiveness.
 As previously noted, when the Legislature of this State enacted the present obscenity statute, it was attempting to satisfy the new test announced by the Supreme Court in Miller. In doing so, it defined `patently offensive' to mean `so offensive on its face as to affront current community standards of decency.' We believe this is in accordance with Miller's holding. In applying its test, we do not believe that the Supreme Court wanted a jury to simply hold everything that could be construed as questionably obscene material to be obscenity, but, instead, required that before material could be held obscene, it had to be patently offensive to the average person, applying current community standards, or, to put it another way, the Supreme Court conferred on the trier of fact, who was to be guided by `the safeguards that judges, rules of evidence, [the] presumption of innocence, and other [such] protective features [provide],' Miller, supra, 413 U.S. at 26, 93 S.Ct. at 2616, the right to make the first determination of identifying the material. Therefore, the right to make the first determination, that is, whether the average person, applying contemporary community standards, would find that the material was facially offensive, and whether, according to contemporary community standards, the material appealed to the prurient interest in sex, was left to the trier of fact. (Emphasis added.)
Andrews v. State, 652 S.W.2d 370, 379-80 (Tex.Crim.App. 1983, no pet.).
By removing from the trier of fact the responsibility to determine the current community standard and to apply that standard to the material in question, the proposed ordinance violates the statutory scheme. Similarly, the ordinance's pronouncement of certain material as patently offensive and presumptively appealing to prurient interest conflicts with state law.
 SUMMARY
A proposed municipal ordinance regulating obscenity that defines the community standard on a less than statewide basis and that determines, as a matter of law, issues that are questions of fact is void as conflicting with state and federal law.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller Executive Assistant Attorney General
 Judge Zollie Steakley Special Assistant Attorney General
 Rick Gilpin Chairman Opinion Committee
 Prepared by Karen Gladney Assistant Attorney General
[1] Penal Code section 1.02(6) states that one objective of the code is "to define the scope of state interest in law enforcement against specific offenses and to systematize the exercise of state criminal jurisdiction." Penal Code section 1.08 preempts any governmental subdivision or agency from enacting or enforcing a law that makes any conduct covered by the code an offense subject to a criminal penalty.